IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |  |
|---|---|---|
| THE GLEN BURNIE MUTUAL SAVINGS BANK, | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO.: WDQ-09-3253 |
| UNITED STATES OF AMERICA, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

The Glen Burnie Mutual Savings Bank ("the Bank") sued the United States, Anne Arundel County ("the County"), Benchworks, Inc., and others, to quiet title and establish lien priority.[1] The United States removed the case from the Circuit Court for

---

[1] The State of Maryland; Richard L. Beall, Inc. AIA; Koritzer & Harris, DDS; Baltimore Gas & Electric Company; and J.J. Haines & Company, Inc. were also named as Defendants. All the Defendants have been served with the complaint, but only the United States, Anne Arundel County, Benchworks, and J.J. Haines have filed responsive pleadings. On May 6, 2010, the Clerk entered a default against the Defendants who have not responded. Paper No. 26.

1

Anne Arundel County. For the following reasons, the Bank's motion for summary judgment will be granted.[2]

I. Background[3]

This dispute involves an October 31, 2007 home Refinancing Agreement between Francis and Patricia Brewis and the Bank. *See* Marian K. McCormick Aff. ¶ 3. Under the Agreement, the Bank lent the Brewises $255,000; repayment was secured by a mortgage on the Brewises' home ("the Property") in Anne Arundel County, Maryland. *Id*. The Brewises retained John S. Smith, Esquire for a title examination. John S. Smith Aff. ¶ 3. Smith discovered that the Property was encumbered by a Purchase Money Deed of Trust, recorded on September 23, 2005, securing a $240,000 loan from the First Guaranty Mortgage Corporation. *Id*. ¶ 4. Smith used the October 31, 2007 loan to pay off the prior loan, and the First Guaranty Deed of Trust was released. *Id*. ¶¶ 6, 7. The Bank's mortgage was recorded in the Land Records of Anne Arundel County on November 20, 2007. *Id*. ¶ 5.

---

[2] The County and Benchworks opposed the motion. On May 26, 2010, the United States advised that it did not oppose the motion and conceded that its tax liens on the Property are subordinate to the Bank's refinance mortgage. Paper No. 32.

[3] For the purposes of the Bank's motion for summary judgment, the Defendants' "evidence is to be believed, and all justifiable inferences are . . . drawn in [their] favor." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

The Brewises failed to make payments under the Refinancing Agreement, and the Bank began foreclosure proceedings. Compl. ¶¶ 19-20. In anticipation of the foreclosure, the Bank retained counsel who discovered liens against the Property that Smith had not found. Compl. ¶ 21; Exs. 1-17. Among these were (1) an April 8, 2004 judgment lien for the County for $1,011.18, *id.*, Ex. 16; (2) a November 13, 1998 judgment lien for Benchworks predecessor-in-interest, Number One Supply Corporation, for $16,820.27, *id.*, Ex. 15; and (3) several federal and state tax liens, *id.* Exs., 5-10.

On October 22, 2009, the Bank sued the Defendants to quiet title and establish lien priority in the Circuit Court for Anne Arundel County. Paper No. 2. On December 4, 2009, the United States removed the case to this Court under 28 U.S.C. § 1442. Paper No. 1. On May 10, 2010, the Bank moved for summary judgment against the Defendants. Paper No. 27. On May 14 and 28, 2010, the County and Benchworks opposed the motion. Paper Nos. 28, 31. The United States advised the Court on May 26, 2010 that it would not oppose the motion; it conceded that the Bank's mortgage had priority over its tax liens. Paper No. 32.

II. Analysis

    A. Standard of Review

Under Rule 56(c), summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in [its] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court also "must abide by the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003).

B. The Bank's Motion for Summary Judgment

The Bank contends that its mortgage is superior to all other liens against the Property because it is equitably subrogated to the First Guaranty Deed of Trust, which--it is undisputed--was the senior lien against the Property.

Under Maryland law, lien priority is usually determined by recording date: lienholders with earlier-recorded liens have priority over lienholders with later-recorded liens. *See, e.g.*, *May Dep't Stores v. Montgomery County.*, 118 Md. App. 441, 702 A.2d 988, 993 (Md. Ct. Spec. App. 1997). Section 7-104 of the Real Property Article provides an exception to this rule for "purchase money mortgages," *i.e.*, mortgages that secure a loan used to purchase the property. Md. Code. Ann., Real Prop. § 7-104; *May Dep't Stores*, 702 A.2d at 993. Purchase money mortgages take priority over prior recorded liens, including judgment liens. *May Dep't Stores*, 702 A.2d at 993. It is undisputed that the First Guaranty Deed of Trust was a purchase money mortgage and senior to the earlier-recorded judgment liens held by the County and Benchworks.[4]

---

[4] The Bank argues that the County's lien does not predate the First Guaranty Deed of Trust because it was not properly recorded in the Land Records of Anne Arundel County until August 7, 2007. Reply Mem. 2. The Court will hold that the Bank's mortgage has priority over the County's lien even if the County's lien had been recorded before First Guaranty's deed of trust.

The Bank argues that under the doctrine of equitable subrogation, its mortgage is entitled to the same status as the First Guaranty Deed of Trust.[5]  It relies primarily on *G.E. Capital Mortgage V. Levenson*, 338 Md. 227, 657 A.2d 1170 (Md. 1995), which explained how equitable subrogation applies to mortgage refinancing:

> Whe[n] a lender has advanced money for the purpose of discharging a prior encumbrance in reliance upon obtaining security equivalent to the discharged lien, and his money is so used, the majority and preferable rule is that if he did so in ignorance of junior liens or other interests he will be subrogated to the prior lien.  Although stressed, in some cases as an objection to relief, neither negligence nor constructive notice should be material.

*Id*. at 1172 (*quoting* G.E. Osborne, *Handbook on the Law of Mortgages* § 277, at 561 (2d ed. 1970)).  The Bank maintains that because the refinance loan was (1) made for the purpose of discharging the First Guaranty Deed of Trust, (2) in reliance on

---

[5] As Judge Garbis of this Court has explained:

> [S]ubrogation is a highly favored doctrine and expansively applied . . . . Once applied, subrogation places the party subrogated in the shoes of the creditor.  The party subrogated acquires all rights, securities, and remedies the creditor has against the debtor and is regarded as constituting one and the same person with the creditor whom he succeeds . . . . One who rests on subrogation stands in the place of one whose claim he has paid, as if the payment giving rise to subrogation had not been made.

*Rinn v. First Union Nat'l Bank*, 176 B.R. 401, 408 (D. Md. 1995) (internal citations and quotation marks omitted).

6

obtaining First Guaranty's status as the senior lien against the Property, and (3) without knowledge of the junior liens, it is subrogated to First Guaranty's Deed of Trust.

The County and Benchworks do not dispute the Bank's factual contentions; they argue that the Bank misreads *G.E. Capital*. They contend that *G.E. Capital* holds that "one who pays the mortgage of another and takes a new mortgage as security will be subrogated to the rights of the first mortgagee as against any *intervening lienholder*."[6] *Id.* at 1175 (emphasis added). Because the County and Benchworks are not "intervening lienholders"--*i.e.*, their liens predate First Guaranty's Deed of Trust--they argue that equitable subrogation may not be applied to subordinate their interests to the Bank's.

*G.E. Capital* does not support the Defendants' argument. *G.E. Capital* involved lien priority between a refinance mortgagee and intervening lienholders; there were no liens that predated the original purchase money mortgage as in this case.

---

[6] *G.E. Capital* explained that:

> Excluded from the concept of "intervening lienholder" is the sequence when there has been a prior lien, a release of the prior lien, a lien in favor of some third party, and then the creation of a lien in favor of the party who paid for the release of prior lien.

*Id.* at 1175 n.1 (internal citation and quotation marks omitted).

7

*G.E. Capital* did not address equitable subrogation and pre-existing liens. However, it cited with approval *Milholland v. Tiffany*, 64 Md. 455, 2 A. 831 (1886), which involved the competing claims of a lienholder who had paid off a purchase money mortgage and lienholders who held pre-existing liens.[7]

Nothing in *G.E. Capital*--or in any other authority cited by the parties or found by the Court--voids *Milholland*. *Milholland*

---

[7] In *Milholland*:

> [A] husband *who had pre-existing debts* acquired realty, financing the acquisition by a purchase money mortgage. He then conveyed the property to his wife, as a gift, and the husband convinced a friend to pay off the purchase money mortgage and to take a new mortgage in its place. Creditors of the husband successfully set aside the transfer to the wife of the equity in the property, *but this Court held that the property remained subject to the lien of the mortgage made to the friend*. *The new mortgagee was subrogated to the claim of the original purchase money mortgagee, and the security for the amount of the refinancing took the character of a purchase money mortgage*. Affirming the ratification of an auditor's account in the husband's insolvency proceeding that awarded the new mortgagee priority over *subsisting creditors*, the [*Milholland*] Court said that unless the new mortgagee were substituted for the purchase money mortgagee, the former "must necessarily lose the money advanced and paid by him on account of the mortgage; and the payment thus made would enure to the benefit of the [the husband's] *subsisting creditors* . . . . [The new mortgagee] is upon the plainest principles of justice, entitled to the right of substitution."

*G.E. Capital*, 657 A.2d at 1176 (*quoting Milholland*, 2 A. 831, 834-35) (emphasis added).

permits equitable subrogation against creditors whose liens predate the original purchase money mortgage.

The County and Benchworks also argue that the Bank should not be subrogated to the First Guaranty Deed of Trust because the Bank was negligent in failing to discover their pre-existing liens when it entered into the Refinancing Agreement, and they were harmed by this negligence. According to the County, "[d]one properly, the title examination would have revealed the existence of the County's lien, and [the Bank] would have extinguished all liens before accepting a mortgage from Brewis. The failure of the Plaintiff to adequately examine title and satisfy the County's lien has therefore damaged the County." County Opp. 5.[8]

The Bank relies on *Bennett v. Westfall*, 186 Md. 148, 46 A.2d 358 (Md. 1946).[9] In *Bennett*, the Court of Appeals held that a second mortgagee was entitled to subrogation to the first

---

[8] Benchworks argues that the Bank was negligent because Smith acted as its agent in the Refinance Agreement closing. Even assuming an agency relationship between Smith and the Bank such that Smith's negligence could be attributed to the Bank, under *Bennett* and *G.E. Capital* mere negligence, without damage to the competing lienholder, does not preclude equitable subrogation. *G.E. Capital*, 657 A.2d at 1176-77; *Bennett*, 46 A.2d at 361. Because the County and Benchworks would not be damaged by equitable subrogation, Smith's agency is irrelevant.

[9] *G.E. Capital* also relied on *Bennett* in describing the effect of negligence of the party seeking subrogation. *See G.E. Capital*, 657 A.2d at 1176.

mortgage--and to priority over a competing lienholder--despite the second mortgagee's allegedly negligent failure to discover the competing lien.  Even assuming the second mortgagee had been negligent, the second mortgagee had priority over the competing lienholder:

> It is clear that [the second mortgagee's] failure to consult the Land Records in no way affected [the competing lienholder]. It certainly did him no harm.  If his contention is sustained in this case it will do him a great deal of good, and this, too, because of a mistake made by [the second mortgagee] in not consulting the Land Records.  His position is: You made a mistake, it did me no harm; in fact, resulted in greatly benefiting me.  Therefore, you can not have your mistake corrected. This position has no appeal to a court of equity.  Negligence, therefore, if any there was, committed by [the second mortgagee], caused no harm to the appellant and it is immaterial.

*Bennett*, 46 A.2d at 361; *see also G.E. Capital*, 657 A.2d at 1176-77.[10]

---

[10] *G.E. Capital* used similar reasoning in rejecting the claim of a competing lienholder against a refinance mortgagee seeking equitable subrogation.  The refinance mortgagee, G.E. Capital:

> intended to achieve a first priority by the refinancing, but failed to do so because of the intervening judgment liens of which G.E. Capital was unaware.  Thus G.E. Capital expended $ 56,283.14 of its funds for the release of First Federal's lien, an expenditure which inured at law to the benefit of [the competing lienholder] who, absent equitable subrogation, would move into the first priority position previously occupied by First Federal. Equity views G.E. Capital as subrogated to the released, first priority claim of First Federal in order to prevent unjust enrichment of [the competing lienholder].

Here, it is undisputed that the Bank intended to achieve a first priority by extinguishing the First Guaranty Deed of Trust. No defendant has presented evidence that the Bank knew of the other liens against the Property; absent equitable subrogation, the County and Benchworks would be unjustly enriched by advancing in priority by virtue of the Bank's apparent mistake. Like the competing lienholders in *Bennett* and *G.E. Capital*, the County and Benchworks seek to advance in priority because of the Bank's alleged negligence. Under *Bennett*, this is not permitted absent a showing that the County or Benchworks has been damaged by that negligence. Permitting subrogation of the Bank's refinance mortgage to the First Guaranty Deed of Trust would not damage the County or Benchworks: each would maintain the priority it had before the refinancing.[11]

On the undisputed facts, the Bank is entitled to judgment as a matter of law. The Bank is equitably subrogated to the

---

*G.E. Capital*, 657 A.2d at 1176-77.

[11] *See Taylor v. Furnace Assocs.*, 2008 Bankr. LEXIS 2687, at *17-18 (Bankr. D. Md. Sept. 10, 2008) ("[I]n Maryland, a refinancing lienholder's . . . negligence only has an effect on the application of equitable subrogation if the intervening lienholder is placed in a worse position than if the refinance had not occurred.").

First Guaranty Deed of Trust; its mortgage has priority over the Defendants' liens.

III. Conclusion

For the reasons stated above, the Bank's motion for summary judgment will be granted.

August 18, 2010                          _____/s/_____
Date                                     William D. Quarles, Jr.
                                         United States District Judge